In the Matter of CHARLES J. STEIERMAN, an Attorney, Respondent.

First Department, February 3, 1933.

*Einar Chrystie* [*Theodore B. Richter* with him on the brief], for the petitioner.

No appearance for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on October

1, 1914, at a term of the Appellate Division of the Supreme Court of the State of New York, Second Department, and has practiced as such attorney since his admission.

By petition and supplemental petition herein he is charged with professional misconduct in three counts, as follows:

(1) In July, 1926, Mrs. May Benjamin retained the respondent to bring an action for divorce against her husband, Joseph Benjamin, and agreed to and did pay him $250 for his services rendered and to be rendered in the matter. The respondent failed to institute any action in behalf of Mrs. Benjamin and from time to time since the receipt of said sum of $250 falsely represented to her that the action was on the court calendar and would shortly be reached for trial. Early in 1928 the respondent said to Mrs. Benjamin that if the case were not called in May of that year he would return to her the sum of $200 of the $250, paid as above stated. Mrs. Benjamin thereafter made several demands upon the respondent for the money, but up to February 21, 1929, when she appeared before the committee on grievances of the petitioner, no part of the money had been paid to her.

After Mrs. Benjamin had complained to the committee on grievances, three letters were sent by said committee to the respondent asking for information in regard to the complaint of Mrs. Benjamin, all of which he ignored.

(2) It was further charged against the respondent that on or about December 29, 1926, George Schaefer retained the respondent to appeal from a judgment which had been rendered against him in an action tried in the Municipal Court of the City of New York, Second District, Borough of Bronx, and paid the respondent the sum of fifty dollars as his fee for services to be rendered in the matter. The respondent caused a notice of appeal to be filed but failed to perfect said appeal or to do anything further in the matter. The respondent promised many times to proceed with the appeal but failed to do so. In November, 1928, Schaefer consulted another attorney, who communicated with the respondent regarding the case, and the respondent then promised said attorney that he would return to the complainant the fee which he had received as above stated, but failed to do so.

After the matter was brought to the attention of the committee on grievances of the petitioner, two letters were sent the respondent asking for an explanation, both of which he ignored. On March 21, 1929, the respondent was notified that the committee would investigate the complaint of Mr. Schaefer at a meeting thereof to be held on March 28, 1929, at five P. M. The respondent failed to appear. Thereafter the respondent was notified that the matter

would be taken up for consideration at a meeting of the committee to be held on April 4, 1929, at five P. M. The respondent again failed to appear.

(3) By said petition the respondent was further charged with misconduct, as follows: In and prior to January, 1929, Leo Bethge, who was in the business of making "ice cream" and candies, believed that his brother, R. Bethge, and one John Stuhrman were interfering with his work by making slanderous statements about him to his employees and others, and were preventing him from getting and keeping employment. On January 11, 1929, he consulted the respondent, told him the facts in relation to his troubles, and asked the respondent to take such remedies as were available in court against his brother and Stuhrman. The respondent told Bethge that he could help him but that it would require a Supreme Court action and that his fee would be $200, to which Bethge agreed and said he would bring in the money on the following Monday. The respondent suggested that it would be advisable to start immediately and he accompanied Mr. Bethge to his bank, where $200 was drawn and turned over in cash to the respondent. The office of the respondent at the time of the retainer was at 918 Brook avenue, borough of The Bronx. About a week later Bethge called on the respondent and at his request signed a blue blank back, and was told by the respondent that a complaint would be drawn up and that he could read it over later. At the same time the respondent told Bethge that it would take about three months before the case would come up. Bethge was never shown any complaint and was never requested to sign any further papers. About three months thereafter Bethge and his wife called upon the respondent at his office at 918 Brook avenue, at which time the respondent told him that he had the "goods" on Stuhrman. Bethge subsequently telephoned the respondent's office but was told he was not in. When Bethge next called at the office he was informed the respondent was not in the city any more. On the next occasion when Bethge called, the name of the respondent had been removed from the door. Bethge thereafter wrote several letters to the respondent asking for information about his case, to the Brook avenue address, all of which were returned. Bethge heard nothing further from the respondent, and was unable to locate him until in June, 1931, he called at the office of the attorney for the committee on grievances and was advised that the respondent then had an office in South Fourth street, Brooklyn. Bethge then wrote the respondent at that address, and received a reply requesting him to call at the office, which he did. The respondent asked Bethge where he had obtained the address. Bethge told him he had

been to the Bar Association and had obtained it there. The respondent told Bethge that he had been taken ill and had gone to California for his health; that he had no clear recollection of Bethge's matter, but that he would look it up and that Bethge should return in a few days. A few days later Bethge again called upon the respondent and was informed by him that no action had been brought. The facts were gone over and the respondent offered either to bring a new action or to return the money. In view of the familiarity of the respondent with the case, Bethge preferred to have him proceed and a complaint was prepared. At the same time the respondent told Bethge that he had in the meantime received a letter from the Bar Association regarding the matter and he showed to Bethge his proposed reply, which was dated July third and read in part as follows: " In January, 1929, I was retained by him to bring an action in his behalf against one John Stuhrman and was paid the sum of $200 and after a lengthy conference with Bethge I then proceeded to prepare the summons and complaint. About a month after being retained, I received a telephone call from Bethge that I discontinue all actions and take no further steps with this case, which was done." When Bethge read the portion which stated that he had telephoned the respondent and told him to discontinue the action, Bethge told the respondent that that statement was not true. The respondent, nevertheless, thereafter mailed the letter to the attorney for the committee on grievances and did not, either in the letter or in any other way, call the attention of the committee to the fact that Bethge disputed the assertion of the respondent that he had been told to discontinue the action.

The respondent answered, and the matter was referred to an official referee to take testimony concerning the charges, and to report to the court together with his opinion thereon.

Hearings were had, and the learned referee has duly reported, finding the respondent not guilty of the charges.

Subsequently, by supplemental petition, the respondent was further charged with professional misconduct, as follows:

That on or about January 11, 1929, one Henry Meichner retained the respondent to bring an action for the dissolution of his marriage pursuant to section 7-a of the Domestic Relations Law of the State of New York.* The respondent agreed to complete the proceedings and to pay all expenses in connection therewith, including the cost of advertising, for the sum of $400. Meichner paid the respondent $200 at the time of retaining him and the balance

---

* Added by Laws of 1922, chap. 279.— [REP.

a few weeks thereafter. On March 4, 1929, the respondent caused to be entered in the Supreme Court, Bronx county, the order required by the statute aforesaid for the institution of the dissolution proceeding. Said order contained the usual provisions for the publication of the notice and fixed the date of hearing for June 3, 1929. The respondent placed orders for the necessary advertising with the *Bronx Home News* and the *New York Law Journal,* which published the notice pursuant to the terms of the order. The first publication appeared on March 7, 1929. The respondent sent to Mr. Meichner printed copies of the advertisements, together with a letter advising him that when the matter approached time for hearing he would notify him and arrange an appointment for Meichner to come to his office and go over the facts of the case in preparation for the hearing. Respondent did nothing further with the case. He paid nothing on account of the advertising bills of the newspapers, amounting to approximately $100, which he had incurred and for which he had been fully paid by his client. He did not obtain or file the affidavits of publication necessary to place Meichner's case upon the calendar and allowed the proceeding to lapse. The respondent left his office sometime before the date fixed for the hearing of Meichner's case and did not thereafter communicate or attempt to communicate with Meichner and made no arrangements to have his case attended to.

Meichner called at the office of respondent on several occasions but was unable to obtain any information from the person in charge as to the whereabouts of the respondent or as to the status of the case. He eventually retained other attorneys, who found it necessary to institute a new proceeding for the dissolution of his marriage, and to readvertise. Meichner subsequently in February, 1932, saw the respondent, accidentally, in New York. At a conference which resulted, the respondent promised to return to Meichner the entire sum of $400, but at the time the matter was investigated by the petitioner's committee on grievances he had repaid no part thereof.

No answer to the aforesaid supplemental charge was served or filed.

The matter was sent to a referee to take proof of said charge and to report the same to this court with his opinion thereon.

The first hearing was set for September 14, 1932. Notice thereof was sent to the respondent by mail. The respondent failed to appear and the hearing was adjourned by the referee to September 21, 1932, and a new notice of hearing directed by the referee to be served. Notice of hearing on September 27, 1932, was served on the respondent personally and by mail. On September 26, 1932,

the respondent communicated with counsel for the petitioner and requested an adjournment. Accordingly a further adjournment was taken to September 29, 1932, and a written stipulation to that effect was signed by the respondent in person and by the attorney for the petitioner. On September 29, 1932, at the time specified in said stipulation, the respondent again failed to appear.

The referee thereupon proceeded to take testimony in support of the charge, and reports the charge sustained by the evidence.

The matter is now before this court, upon motion of the petitioner, for appropriate action by this court.

The respondent in effect stands self-convicted by his failure to answer or appear at the hearing in connection with the last mentioned charge. In all the aforesaid matters he has displayed a flagrant disregard for and neglect of the interests of his clients, and to this extent, at least, the report of the referee, to whom the three first mentioned charges were referred, is not in accord with the facts. It seems more than a mere coincidence that in two of the first mentioned charges the respondent defaulted in answering the committee on grievances as he has defaulted in answering the petition in the last mentioned charge. Apparently it is the practice of the respondent to neglect the interests of his clients and to give nothing approximately in return for their retainers.

The respondent should be disbarred.

MERRELL, MARTIN, O'MALLEY and TOWNLEY, JJ., concur.

Respondent disbarred.